```
IN THE UNITED STATES DISTRICT COURT
 FOR THE WESTERN DISTRICT OF MISSOURI
           SOUTHERN DIVISION
```

| | |
|---|---|
| MAKAYLA STAPLES, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 13-3094-CV-S-ODS-SSA |
| ) | |
| CAROLYN W. COLVIN, ) | |
| Acting Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |

## ORDER AND OPINION AFFIRMING
## <u>COMMISSIONER'S FINAL DECISION DENYING BENEFITS</u>

Pending is Plaintiff's appeal of the Commissioner of Social Security's final decision denying her application for disability insurance benefits and supplemental security income. The Commissioner's decision is affirmed.

## I. BACKGROUND

Plaintiff was born on July 20, 1979. She completed school through the eighth grade and previously worked as a semiskilled labor, packager, and a fast food manager. R. 53. Plaintiff alleges disability beginning October 1, 2008, due to bipolar disorder, depression, panic disorder, marijuana abuse, fibromyalgia, headaches, high cholesterol, a previous compression fracture in her lower back, early degenerative disk disease, and radiculopathy.

A complete summary of the record is not necessary. The following will suffice for purposes of this appeal. An x-ray performed of Plaintiff's back in January 2009, showed a mild compression fracture from an old injury and mild narrowing in one vertebra. R. 324-25. An x-ray report dated August 12, 2010, showed a mild compression fracture, very mild loss of disk height at one vertebra, mild stacking of the lower spine. R. 552.

On November 4, 2010, Plaintiff had normal gait and station, adequate muscle strength and tone, and normal range of motion in her back, neck, arms, and legs. R. 514.

Plaintiff completed a Function Report on April 26, 2010. R. 221-28. Plaintiff reported she cared for her children, which included feeding, bathing, dressing, and getting them ready for school. R. 221-22. She prepared meals daily, cleaned, did the laundry, shopped for groceries, read, watched television, and played video games. R. 221, 223-25. She also reported she spent time around her family. R. 225. Plaintiff was able to pay her bills and count change. R. 224.

Plaintiff saw her treating physician, Salvador Cenciceros, M.D., from April 2010 through March 2012. R. 364, 382, 384, 386, 409-31, 463-508, 558-55, 571. On twelve occasions, Dr. Cenciceros assessed Plaintiff with a GAF score of more than 55. R. 385, 387, 414, 426, 465, 467, 469, 471, 475, 481-82, 564, 566. Dr. Cencieros opined that Plaintiff was getting better on medication and at one point even noted she was doing "exceptionally well". R. 384, 386, 413, 415, 417, 425, 464, 467-68, 470, 474, 482, 565. Treatment records noted that Plaintiff's attention and concentration were within normal limits. R. 413, 415, 417, 425, 468, 470. Dr. Cenciceros completed a medical source statement—mental on December 9, 2010, and opined that Plaintiff at a minimum had marked limitations in all areas of functioning, including extreme limitations in maintaining attention and concentration for extended periods, accepting instruction and criticism, and maintaining appropriate social behavior. R. 406-07.

An administrative hearing was held on November 1, 2011. At the hearing, Plaintiff testified that she suffered from back pain and was only able to sit for twenty to thirty minutes at a time, and could only stand for ten or fifteen minutes at a time. R. 47-48. Plaintiff testified that she lives at home with her two children—ages five and six. R. 36. She testified she drove her children to school. R. 37. She testified she was able to cook, clean, and do the dishes and laundry. R. 48-49.

At step one of the five-step sequential process, the administrative law judge ("ALJ") determined Plaintiff had engaged in substantial gainful activity since October 1, 2008, the alleged onset date. R. 17. At step two, the ALJ found Plaintiff has the following severe impairments: mild compression fracture in the lumbar spine at L2 and

2

early discogenic spondylosis at L11 (early degenerative disc disease), chronic headaches, major depressive disorder, bipolar disorder, panic disorder with agoraphobia, borderline personality traits, and marijuana abuse (20 CFR 404.1520(c) and 416.920(c). R. 17. At step three, the ALJ determined Plaintiff does not have a listed impairment. R. 18. For steps four and five, the ALJ concluded:

> [T]he claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except she is limited to occasional crawling, stooping, kneeling, and squatting; however, she can frequently climb stairs. She is unable to climb ladders, ropes, or scaffolds, but she can frequently bend, twist, and turn while sitting or standing. She is unable to use air or vibrating tools, or operate motor vehicles. Moreover, she should have no contact with the public and avoid unprotected heights, however, she can occasional[ly] interact with co-workers and supervisors. Finally, she is unable to respond to usual work situations that require the use of complex instructions.

R. 20. Next, the ALJ found, based on the vocational expert's testimony, that Plaintiff is unable to perform any past relevant work, but considering her age, education, work experience, and RFC, there are jobs that exist in significant numbers in the national economy that Plaintiff could perform, including assembler, poultry dresser, and office helper. R. 26. Finally, the ALJ concluded Plaintiff is not disabled. R. 27.

## II. STANDARD

"[R]eview of the Secretary's decision [is limited] to a determination whether the decision is supported by substantial evidence on the record as a whole. Substantial evidence is evidence which reasonable minds would accept as adequate to support the Secretary's conclusion. [The Court] will not reverse a decision "simply because some evidence may support the opposite conclusion." *Mitchell v. Shalala*, 25 F.3d 712, 714 (8th Cir. 1994) (citations omitted). Substantial evidence is "more than a mere scintilla" of evidence; rather, it is relevant evidence that a reasonable mind might accept as adequate to support a conclusion. *Gragg v. Astrue*, 615 F.3d 932, 938 (8th Cir. 2010).

3

III. DISCUSSION

A. The ALJ Properly Analyzed Plaintiff's Credibility

Plaintiff argues the ALJ improperly analyzed her credibility. The Court disagrees. "The credibility of a claimant's subjective testimony is primarily for the ALJ to decide, not the courts." *Pearsall v. Massanari*, 274 F.3d 1211, 1218 (8th Cir. 2001). The Court must "defer to the ALJ's determinations regarding the credibility of testimony, so long as they are supported by good reasons and substantial evidence." *Guilliams v. Barnhart*, 393 F.3d 798, 801 (8th Cir. 2005). In evaluating a claimant's subjective complaints, the ALJ must consider the factors set forth in *Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir. 1984). The *Polaski* factors include: (1) the claimant's daily activities; (2) the duration, intensity, and frequency of pain; (3) the precipitating and aggravating factors; (4) the dosage, effectiveness, and side effects of medication; (5) any functional restrictions; (6) the claimant's work history; (7) the absence of objective medical evidence to support the claimant's complaints. *Id.*

In evaluating Plaintiff's credibility, the Court finds that the ALJ properly considered the inconsistencies between Plaintiff's allegations of disabling impairments and the other evidence in the record. First, the ALJ considered that Plaintiff's mental impairments were relatively controlled with medication. R. 22-23. Dr. Ceniceros's treatment notes indicate Plaintiff's mental impairments improved with the right medication. R. 384, 386, 413, 415, 417, 425, 464, 467, 468, 470, 474, 482, 565. From May through June 2011, Plaintiff was "very stable" and doing "exceptionally well," on her medication. R. 464, 467, 565. The effectiveness of a claimant's treatment may be taken into consideration when assessing her credibility. *See Collins ex rel. Williams v. Barnhart*, 335 F.3d 726, 729-30 (8th Cir. 2003 ("[I]mpairments that are controlled by medication do not support a finding of total disability.")

Next, the ALJ properly considered that the objective medical evidence went against Plaintiff's credibility. Plaintiff alleged that her back pain makes it difficult to stand and sit. R. 48. However, x-rays were relatively normal, showing only "mild" narrowing in one vertebra, a "mild" compression fracture from an old injury, "very mild

4

loss" of disk height at one vertebra, and mild stacking of the lower spine. R. 22, 324-25, 552-53. Plaintiff had a normal gait and station, adequate muscle strength and tone, and normal range of motion in her back, neck, arms, and legs. R. 514.

Plaintiff's minimal and conservative medical treatment was also considered. The ALJ noted that as to Plaintiff's back pain, she never received any physical therapy, epidural injections, or underwent invasive surgery. Plaintiff received occasional pain medication and an injection in January 2009 for her alleged back pain. R. 320, 322, 328. Conservative treatment reduces a claimant's credibility. *See Gowell v. Apfel*, 242 F.3d 793, 796 (8th Cir. 2001).

Finally, Plaintiff's activities of daily living went against her credibility. Plaintiff cared for her personal needs, prepared meals, watched television, read, played video games, did the laundry and dishes, cleaned, and drove a car. R. 221, 223-25. Plaintiff also admitted that she cared for her young children, which included bathing, feeding, dressing, and driving them to school. R. 221-22. Plaintiff also stated she is able to go shopping and spend time around family members. R. 224-25. Finally, Plaintiff testified she is able to pay her bills and count change. R. 224. "Acts which are inconsistent with a claimant's assertion of disability reflect negatively upon that claimant's credibility." *Heino v. Astrue*, 578 F.3d 873, 881 (8th Cir. 2009) (quoting *Johnson v. Apfel*, 240 F.3d 1145, 1148 (8th Cir. 2001)). The Court finds there is substantial evidence in the Record to support the ALJ's decision to discount Plaintiff's credibility.

B. The ALJ Properly Weighed Dr. Ceniceros's Opinion

Next, Plaintiff argues the ALJ not give appropriate weight to Dr. Ceniceros's opinion. The Court disagrees.

The ALJ gave many good reasons for applying little weight to Dr. Ceniceros's opinion. First, the ALJ noted that Dr. Ceniceros's opinions were not consistent with his treatment notes. R. 24. Plaintiff getting better on medication and at one point even noted she was doing "exceptionally well". R. 425, 467, 468, 656. He noted that Plaintiff's attention and concentration were within normal limits. R. 413, 415, 417, 425, 468, 470. The treatment notes also showed a GAF score more than 55, which the ALJ

found "inconsistent with a fin[d]ing of marked-to-extreme social functioning limitations." R. 385, 387, 414, 426, 465, 467, 469, 471, 475, 481-82, 564, 566.

Next, the ALJ found that Dr. Cencieros's opinion was not consistent with the remainder of the evidence in the record. R. 24. For example, the record shows that Plaintiff was treated with medication and her condition improved with treatment (R. 377, 380, 496), was in "fair" health (R. 496), and that Plaintiff displayed normal behaviors, normal attention span and concentration, and was well-oriented (R. 444, 448, 496).

Finally, the ALJ pointed out that Dr. Ceniceros's opinion was based primarily on Plaintiff's subjective complaints. R. 24, 474, 482. An ALJ is entitled to discount an opinion when it is based largely on the claimant's subjective complaints. *See Kirby v. Astrue*, 500 F.3d 705, 709 (8th Cir. 2007). The Court finds that there is substantial evidence in the record to support the ALJ's decision to apply little weight to Dr. Cinceros's opinion.

## IV. CONCLUSION

There is substantial evidence in the Record to support the ALJ's decision. The Commissioner's final decision is affirmed.

IT IS SO ORDERED.

/s/ Ortrie D. Smith
ORTRIE D. SMITH, SENIOR JUDGE
DATE: January 10, 2014　　　　　　　　　UNITED STATES DISTRICT COURT